UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY EUGENE EASLEY, | No. 2:17-cv-00475 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.[1]

BACKGROUND

Plaintiff, born xx/xx/1967, applied on January 7, 2014 for Disability Insurance Benefits ("DBI") and SSI, alleging disability beginning October 15, 2013; he later amended the onset date to January 22, 2014. Administrative Transcript ("AT") 38, 107, 189. Plaintiff alleged he was

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to Title 28 U.S.C. § 636(c)(1). ECF Nos. 8 and 23.

1

unable to work due to nightmares, heart disease, depression, anxiety, memory loss, blurred/double vision, migraine headaches, and sensitivity to light. AT 107. In a decision dated January 29, 2016, the ALJ determined that plaintiff was not disabled.[2] AT 9-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since January 22, 2014, the amended alleged onset date.
>
> 3. The claimant has the following severe impairments: post-traumatic stress disorder ("PTSD"), borderline intellectual functioning, and a history of polysubstance abuse.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

        4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

        5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except with the following limitations: he can perform simple tasks in a setting with no work at a fixed production rate; few workplace changes; no direct interaction with the general public; and no more than occasional interaction with coworkers and supervisors.

        6. The claimant is unable to perform any past relevant work.

        7. The claimant was born on May 5, 1967 and was 46 years old, which is defined as a younger individual age 18-49 on the amended disability onset date.

        8. The claimant has a limited education and is able to communicate in English.

        9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

        10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

AT 11-23.

ISSUES PRESENTED

    Plaintiff argues that the ALJ erred in finding that plaintiff failed to meet the listing requirements for Listing 12.05, Intellectual Disability.

LEGAL STANDARDS

    The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff contends that because the ALJ found that plaintiff has an IQ score of 70 and an additional severe mental impairment of PTSD, the ALJ erred in finding that plaintiff was not presumptively disabled under Listing 12.05C.[3]

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). The Listings under 12.05 describe intellectual disabilities consisting of a "significant subaverage general intellectual functioning

---

[3] Listing 12.05C was deleted from the Listings as of January 17, 2017, pursuant to the final rule on Revised Medical Criteria for Evaluating Mental Disorders, 81 F.3d Reg. 66138 (Sept. 26, 2016). However, as the agency decision at issue in this action became final prior to January 17, 2017, application of prior Listing 12.05C is appropriate in this case. See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.3d Reg. 66138 n.1 (Sept. 26, 2016) ("We expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")

4

with deficits in adaptive functioning initially manifested during the developmental period," i.e. the onset of the impairment occurred before the individual was age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The manifested deficit in adaptive functioning is a prerequisite that must be met by Listings 12.05A-D, along with the individual requirements for each subdivision.

The Ninth Circuit has explained that

> Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or mental impairment causing an additional and significant work-related limitation.

Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Circ. 2013). Plaintiff has the burden of proving he has an impairment that satisfies these criteria. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2004).

The ALJ discussed at length whether plaintiff met the requirements of 12.05C, writing as follows:

> Here, the claimant fails to meet the requirements of [Listing 12.05's] diagnostic description because the evidence does not support a finding that the claimant had significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age 22. First, the record does not contain any medical evidence or psychological testing to support a finding that the claimant had significantly subaverage general intellectual functioning prior to age 22. Psychological testing was performed in March 2014 which documented a full-scale IQ of 70 . . . However, at the time of the March 2014 testing, the claimant was 46 years old. The only information concerning the claimant's intellectual functioning prior to age 22 derives solely from the claimant's own report. In this regard, the claimant endorsed a history of special education classes in English, Math, and History (Exhibits 2E, 6F, and Hearing Testimony). However, the claimant testified that he was able to read and write and had not required vocational training (Hearing Testimony). There is no evidence in the record as to what percentage of the claimant's classes were through special education as opposed to regular classes or how the claimant performed during school.
>
> Additionally, there is no evidence in the record showing that the claimant had deficits in adaptive functioning prior to age 22, and the claimant's currently reported activities of daily living[4] suggests

---

[4] "Specifically, the claimant has endorsed the ability to live in a homeless shelter, attend to his personal care independently, prepare simple meals, sweep the kitchen, help with the dishes, go outside every day, go out alone, spend time with others, play checkers or card games with others,

> that he did not have deficits in adaptive functioning prior to age 22. . . . Furthermore, the record indicates that the claimant was able to work consistently on a full-time basis for approximately four years and perform semi-skilled work (Exhibit 2E and Hearing Testimony).
>
> Thus, despite evidence that the claimant's March 2014 full-scale IQ score could fall within a range covered by the express requirements of 12.05C, I find that the claimant has failed to meet the requirements of the diagnostic description of Listing 12.05. For these reasons, the severity of the claimant's impairment does not meet listing 12.05.

AT 16.

At the hearing, plaintiff testified that he was in special education throughout elementary school and high school. AT 54. His classes covered the subjects of English, math, and history. AT 41. Plaintiff testified that he had problems with authorities when he was young and was "in and out of juvenile hall" for "theft, getting in trouble, getting suspended [from] school, and stuff like that." AT 55. "[T]hey made me a ward of the court because they deemed me uncontrolled and sent me to the boys' ranch." AT 55. Plaintiff testified that he could read and write and had completed schooling through 10th grade. AT 40-41. He had no vocational training. AT 41.

Plaintiff testified that he had a driver's license and was living at a homeless shelter. In the past, he had worked as a dishwasher and host, and as support staff at a drug and alcohol treatment center, where his duty was to make sure everyone checked in on time and went to meetings. AT 41-42. He also worked as removal staff for a company called Ramsay Group, where he retrieved bodies from "homicides, suicides, motor vehicle accidents," cleaned up the scene, and transported the body to the funeral home. AT 43. There, he would assist the mortician in washing body and with cremation. AT 44. Plaintiff left that job because it was traumatizing. AT 44-45. When working at the funeral home, plaintiff relapsed into drug use because of "the things that happened there," but he went through a recovery program and had not used drugs or alcohol since October 13, 2013. AT 55.

---

use public transportation, shop for food and clothes in stores, go to church, attend a group recovery program four times a week . . . , present for his medical appointments, visit with his estranged wife . . . , manage his finances independently, and read the Bible." AT 19 [record citations omitted]. Plaintiff does not dispute this summary of daily activities.

6

Plaintiff's main problem in meeting the Listing 12.05C criteria is that he presents no evidence of "subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22." Even if his documented IQ of 70, assessed when he was 46 years old, is assumed to have been consistent for the past 24 years[5], plaintiff has no records showing intellectual disability or deficits in adaptive functioning in his teens or early twenties. While plaintiff testified that he took special education classes in elementary school and high school, defendant points out that "there is no record or third party statement from a teacher, school, family member or acquaintance that supports a finding that Plaintiff took special education courses *because* he was intellectually disabled as an adolescent." (ECF No. 21 at 13.)

In fact, the record attests to a variety of other circumstances that could have been significant factors in his placement in special education and failure to graduate high school. Plaintiff was "sent to foster homes and correctional facilities as a child, became a ward of the state" (AT 503); "by age 12 he was in 'a Boys Ranch' and had developed a history of incarcerations for steeling [sic] and fighting" (AT 512); plaintiff reported "a history of alcohol dependence beginning at age 12 years old and methamphetamine dependence, beginning at age 15 year old" (AT 518). Consistent with this record, plaintiff testified that he was "in and out of juvenile hall," suspended from school, made a ward of the court because he was deemed "uncontrolled," and sent to a boys' ranch during his school years. None of these problems during plaintiff's youth demonstrate intellectual disability, though they were obviously disruptive to his ability to attend regular classes. Unlike in Gomez v. Astrue, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010), cited by plaintiff, there are no school records of plaintiff's cognitive abilities or grades to bolster his claim of intellectual disability as an adolescent.

Finally, plaintiff's activities as an adult do not suggest longstanding significant intellectual disability. He worked for two years as a funeral arranger involved in the removal, transportation

---

[5] But see, e.g., Andrews v. Colvin, 2015 WL 4399479, *4 (E.D. Cal. July 16, 2015) ("An IQ test conducted at age forty-six does not evidence plaintiff's impairment prior to age twenty-two."), citing Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001) (finding no evidence of onset of impairment before age twenty-two when IQ test performed at the age of forty-two revealed a full scale score of 69).

7

and cremation of bodies, and prior to that worked as a swing shift supervisor and drug and alcohol counselor. (AT 303.) Prior to that he worked as a host and dishwasher. (AT 303.) As an adult, plaintiff obtained a driver's license and was able to engage in a variety of daily activities, including managing his own finances and playing checkers and card games, as noted above.

As plaintiff has not met his burden to show he was presumptively disabled under Listing 12.05C, the court finds no error in the ALJ's determination in this regard.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is granted; and

3. Judgment is entered for the Commissioner.

Dated: May 23, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/easley0475.ssi.ckd